EMMA L. DAVIS v. BOSTON & MAINE RAILROAD.

February Term, 1912.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed October 21, 1912.

*Railroads—Operation—Detached and Moving Cars—Injury to Pedestrian—Negligence of Railroad—Sufficiency of Evidence—Final Judgment in Supreme Court on Reversal.*

In an action by a child to recover for injuries from having been struck by a detached car, as the child was crossing defendant's railroad yard by a path claimed to be maintained by defendant for public use, owing to defendant's alleged negligence in allowing the car to run of its own momentum, at great speed, without control or means of control, and without warning, evidence considered, and *held* that it did not fairly and reasonably tend to show the negligence alleged.

Where, on review, a verdict is set aside and judgment reversed for the failure of the trial court to grant defendant's motion for a directed verdict, and it is manifest that the facts and circumstances of plaintiff's case were fully brought out on the trial below, the case will not be reversed, but final judgment will be rendered in Supreme Court.

CASE for negligence. Plea, the general issue. Trial by jury at the June Term, 1911, Orange County, *Butler,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case.

*W. B. C. Stickney* for the defendant.

*David S. Conant* and *Frank S. Williams* for the plaintiff.

ROWELL, C. J. CASE for negligence. On Nov. 7, 1906, the foremost of two empty platform cars, coupled, detached from an engine, and running by their own momentum, hit and injured the plaintiff, a child of six years, at a point on track No. 5 about

thirty feet south of the switchhouse standing east of the passenger station at White River Junction, as she was going from school to her home on Railroad Street east of all the tracks and between them and the Connecticut River.

The case made by the declaration is, that at the said time when, etc., there was, and for a long time had been, a path or way maintained by the defendant for the use of the public in passing and repassing from the park or common in the village of White River Junction to said station and across its northerly platform, thence across the tracks east of the station, and thence to the houses on Railroad Street; that it was then and there the duty of the defendant to run and move said engine and car with such care and prudence as to cause no unnecessary injury to . persons passing over its tracks along and upon said path or way; but that in disregard of its duty in this behalf, it was careless and negligent in causing said engine and car to move with great speed in approaching said path or way, and in detaching said car from the engine and allowing it to approach said path or way by its own momentum without any means of controlling it by the presence of someone upon it nor otherwise and without warning, whereby and by reason thereof it approached said path or way with great speed and without warning or control; and that the plaintiff, then and there being in said path or way, and lawfully walking along the same, without fault on her part, was run over and injured.

The defendant moved for a verdict on several grounds, and among them, (1) for want of evidence tending to show any liability; (5) for want of evidence tending to show that the brakeman did not do his whole duty; and (7) for want of evidence tending to show negligence on the part of the defendant or its employees. Plaintiff's counsel say in their brief that the first and last of these grounds seem to include the whole motion; and these grounds raise the principal question in the case.

The negligence alleged is, as we have seen, great speed of the car, and allowing it to run by its own momentum without control or means of control and without warning. But it appears that the car was not running with great speed, for the plaintiff's witness Brown, the yard master, who was standing in front of the switch shank a few feet east of the middle of the switchhouse at the time of the accident, and about twenty-five or thirty feet from where it took place, testified that the car had just got

started to move when it passed him, and that the fastest it moved to the time of the accident was not, at the most, over two or three miles an hour, and that a brakeman, with the brakes in good working order, could stop it in going its length, which was thirty-five feet. And the defendant's witness Leonard, a conductor on the Woodstock road, who saw the accident, said the car was not going very fast. This is all the testimony there is as to the speed of the car.

As to the absence of means to control the car, both of these witnesses testified that there was a brakeman upon it, and Leonard said that he was trying to set up the brakes. No other witnesses testified on this subject. It is manifest that these witnesses are right on both of these points, notwithstanding the suggestions of counsel to discredit Brown as to a brakeman being on the car, for if the car was going fast as claimed, or was going slow without control, it could not have stopped as it did in half its length after hitting the child, for she was found lying on the ground about midway of the foremost car.

Moreover, said cars were going into a train being made up on track No. 5, on which other cars were then standing that were to constitute a part of that train, and Brown testified without contradiction that it was the duty of the brakeman to watch and control his own cars so they would not strike the other cars with too much force.

Nor is there anything in the case fairly and reasonably tending to show that the brakeman did not do his duty. It is said in the plaintiff's brief that it is probably true that there is no evidence that the employees saw the plaintiff in time to stop the car and avoid the accident, but that there is evidence that they could and ought to have seen her in time for that. In support of this claim, counsel argue that the car that hit the plaintiff was stopped seventy-five feet north of the switchhouse, and that a brakeman on the front of it in that position could, at the time it started, see the whole length of track No. 5, and the whole of the platform north and east of the station where the plaintiff crossed it, and vouch Brown's testimony when recalled for further examination in chief. But that testimony affords no basis for the argument except as to seeing the whole length of track No. 5, for the witness distinctly says that it was not the car that hit the plaintiff that was stopped seventy-five feet north of the switchhouse, but the north end of the car ahead of it,

next to the engine that was stopped that distance from the switchhouse, and that the south end of the car that hit the plaintiff, which counsel call the front end, was only about five feet north of the switch, which stood a few feet east of the middle of the switchhouse.

But although the testimony vouched does not support this argument, except as stated, we have, nevertheless, departed from the practice often announced of not searching the transcript, to see if we could find anything that does support it, and we find that this witness testified when first called that a man standing on the car in question at the time it started south, looking by the northerly line of the switchhouse, could see the main east door of the station, and to the north and west, practically all of the platform that one would walk over in coming from the street across to the tracks, but that the car would not have to go a great ways before his line of vision would be cut off.

But as counsel do not refer us to this testimony, we infer that they do not rely upon it to show negligence on the part of the brakeman; nor could they with reason, for it cannot be said that at that time and place he should have been looking out for the child, even had he seen her, which is not claimed, for he could not then have anticipated that she would attempt to cross the tracks as she did.

Counsel further argue in this connection that it appeared that a person standing on the front of the car going southerly, as soon as the southerly end of the car passed the switchhouse, would have a clear view from the station to the place of accident, and Brown's testimony on a designated page of the transcript in answer to a designated question is referred to in support of the argument, and from that testimony they further argue that there would have been sufficient time for such person to see the track at the place of accident and anyone approaching the track in the course the plaintiff took, when twenty feet or more from the place of accident, in time to warn the person or stop the car.

But the testimony referred to does not warrant the argument, for the witness does not say, as argued, that a person standing on the front of the car would have a clear view from the station to the place of accident as soon as the end of the car passed the switchhouse, but that he would not have such view until the car had passed the house six or eight feet.

And counsel still further argue that as the car came down the track, the switchhouse would be between it and the station; so that a part of the view of the platform would be cut off, but as the car proceeded, and after it had passed the switchhouse, the whole platform on the north and east side of the station would be in view, so that if there had been a man on the front end of the car, he would have had a clear view of the place of accident and of the course the plaintiff took in crossing the platform and the tracks, and would have had ample time to stop the car before the accident happened. In support of this argument the transcript is referred to only at blank pages, so we do not know where to look; but as this argument is practically the same as the argument just before it, we conclude it is but a paraphrase of that, and therefore answer it the same way, that is, by saying that the testimony was that the man could not see as argued till he had passed the switchhouse six or eight feet.

The plaintiff testified that from the time she was on the concrete at the northeast corner of the station she could see the freight train engine and the car that hit her; that she thought she could run ahead of it and get by safely; that she did not remember whether she ran or walked, nor whether she heard any one call to her just before she was hurt, nor how many tracks she had to cross, but thought there were five. This testimony was not modified by that of any other witness called by her.

Mr. Leonard testified that he saw the plaintiff as she ran around the corner and past the window and out across the tracks; that she seemed to jump over the rail, and evidently did not see the car at all, but seemed to run right into it.

Now the car having stopped in half its length after hitting the plaintiff, and the other testimony being essentially what we have indicated, we deem it clear beyond a reasonable doubt that the car was going slow at the time with a brakeman upon it who saw the plaintiff the moment he passed the switchhouse far enough to see her, and that he then did all he could to stop the car and avoid the accident, for otherwise it is not conceivable that the car could have stopped as soon as it did, for certainly the plaintiff's leg, over which it ran below the knee, could not perceptibly have checked its progress, much less have stopped it altogether.

We hold, therefore, that there is no evidence fairly and reasonably tending to show negligence on the part of the de-

fendant. This being so, it is unnecessary to consider any of the other questions in the case. It being manifest that the facts and circumstances of the plaintiff's case were fully brought out on the trial, the case will not be remanded, but final judgment rendered here.

> *Judgment reversed, verdict· set aside, and· judgment for the defendant to recover its costs.*