CORA E. RYAN *v.* ORIENT INSURANCE COMPANY AND LYMAN S. HAYES.

October Term, 1922.

Present:   WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed January 4, 1923.

*Malicious Prosecution—Malice May Be Inferred From Want of Probable Cause—Proof of Either Malice or Want of Probable Cause Does Not Establish Other As Matter of Law— Presumption—Burden on Plaintiff—Action Not Favored— To Sustain, It Must Appear That Defendant Was Proximate and Efficient Cause of Prosecution—Failure So to Do Ground for a Directed Verdict—Rule As to Full Disclosure of Facts by Informant Inapplicable Where Prosecuting Officer Proceeds Independently—Effect of Securing Presence in State of Person to Be Prosecuted at Request of State's Attorney —Motion   for   Reargument—Requisites—Rehearing   Not*

*Granted to Present New Questions—Brief—Limitations of
Motion and Brief Thereon—Court Not Required to Search
Transcript to Support Judgment—Question Not Previously
Raised Will Not Be Considered—Presumption of Regularity
of Official Actions.*

1. In an action for malicious prosecution the malice that will sup-
port the action, though a separate question of fact, may be in-
ferred *prima facie* from proof of want of probable cause.

2. In such an action, while want of probable cause affords evidence
of malice, they are independent facts each essential to the
cause of action, and proof of the one will not establish the
other as a matter of law.

3. Where the procedure for criminal prosecutions is not based upon
the affidavit or complaint of a private individual, but upon a
complaint made by a prosecuting officer elected for that pur-
pose, *prima facie* the prosecution is instituted and conducted
by the public prosecutor, and the plaintiff in a subsequent
action for malicious prosecution has the burden of showing
that the defendant in such suit was directly responsible for
the institution or continuance of the proceedings upon which
action is based.

4. An action for malicious prosecution, and especially when for the
institution of criminal proceedings, is not favored in law, and
hence has been surrounded with more stringent limitations
than in most other actions for damages, and recovery is al-
lowed only when the requirements of such limitations have
been fully met.

5. In an action for malicious prosecution, it must affirmatively
appear as a part of the plaintiff's case, that the defendant was
the proximate and efficient cause of the proceeding of which
complaint is made, and it is not sufficient merely to show that
defendant gave information which set the machinery of the
law in motion; nor has a defendant "caused a prosecution" so
as to render him liable when he acts only in subordination to
the prosecuting attorney and under the latter's directions.

6. In such an action, if there is evidence fairly and reasonably tend-
ing to support the claim that defendant was the proximate
and efficient cause of the proceeding against plaintiff of which
complaint is made, the question is one of fact for the jury,

but the burden being with the plaintiff, failure to make the necessary proof is a valid ground of a motion for a directed verdict.

7. In an action for malicious prosecution against an insurance company and its agent where the claimed liability of the company depended upon the agent's connection with the prosecution, *held* that there was no evidence in the case on which a jury would be justified in finding that such agent was the proximate and efficient cause of the institution or continuance of plaintiff's prosecution.

8. In such an action, the rule, that to escape liability an informant must fairly and truthfully disclose to the prosecuting attorney all matters within his knowledge having a material bearing upon the question of the innocence or guilt of the person suspected, does not apply where the action of the prosecuting attorney was uninfluenced by the facts disclosed, which were simply used as a basis for his investigation, the prosecution being the result of such investigation.

9. Where defendants, an insurance company and its agent, at the request of the State's attorney, required the plaintiff, whose property had been insured in such company, to come into the State for examination concerning the loss, in accordance with a provision in its policy, with knowledge that the ultimate purpose of the requirement was to bring her within the jurisdiction of the State so that she could be prosecuted for arson, they were not liable in an action of malicious prosecution as prosecutors of the criminal charge in the prosecution which ensued, because the defendants were not acting voluntarily but at the solicitation and under the direction of the State's attorney.

10. In a motion for reargument in the Supreme Court, it is not enough to assert that the Court has failed to consider "certain evidence in the record" tending to support the plaintiff's claim at the hearing, but the motion must point out specifically material evidence then relied upon which it is claimed the Court has overlooked, and such a defect in the motion is not aided by the brief filed in support of it.

11. A rehearing is not granted for the purpose of affording opportunity to present new questions.

12. A brief, in support of a motion for reargument, containing 35 pages, mainly devoted to argument and wholly failing to direct attention to claims in the original brief respecting matters complained of, is not proper practice, for the appropriate time for argument has then passed, the object of the motion being to point out wherein it is thought the Court has erred in disposing of the questions already argued.

13. A motion for reargument is confined to points that have been presented in the brief and argument thereon.

14. Leave to file briefs in support of a motion for reargument does not open the door to argument of the grounds of the motion, the only legitimate object of a brief on such motion being to direct the attention of the Court to those portions of the brief on argument which are relied upon in support of the motion.

15. Where a voluminous transcript is made the record, failure to point out in the brief on argument the evidence relied upon places an unnecessary burden on the Court, which is not required to search the transcript to see if anything can be found to support the judgment.

16. The claim that the defendants and the State's attorney were joint tort-feasors will not be considered as a ground for reargument, where such was not the theory on which the case was tried below or argued in Supreme Court.

17. As there is a presumption, although rebuttable, that official actions are regular unless the contrary is made to appear, in an action for malicious prosecution where the State's attorney testified that he acted independently of information given him by the defendants, and there was no conflict in the evidence respecting what he did, the jury would not be at liberty to infer that the defendants instituted and continued the prosecution, for it must be presumed, the contrary not appearing, that the State's attorney's investigation disclosed probable cause, and the fact that he thereupon issued the information and persisted in the prosecution is sufficient of itself to show that he assumed the responsibility.

ACTION OF TORT for malicious prosecution. Plea, the general issue. Trial by jury at the March Term, 1921, Chittenden County, *Chase,* J., presiding. Verdict and judgment for the

plaintiff.   The defendant excepted.   The opinion states the case.
*Reversed, and judgment for the defendants to recover costs.*
*Motion for reargument overruled.*

*M. G. Leary* and *C. H. Darling* for the defendants.

*V. A. Bullard, C. Bertrand Race* (Albany, N. Y.), and
*Butler, Kilmer & Corbin* (Saratoga Springs, N. Y.), for the
plaintiff.

TAYLOR, J.   The plaintiff has recovered judgment against
both defendants on the verdict of a jury in an action for
malicious prosecution.   The case is here for review on the de-
fendants' exceptions to the overruling of a motion for a directed
verdict, and on certain exceptions to the charge and to the rul-
ings of the court on matters of evidence.

The plaintiff came to Burlington from the State of New
York in the fall of 1912 and opened a millinery shop in a small
store hired for the purpose.   In December, 1912, she procured
insurance on the contents of the store from the Orient Insurance
Co., through its local agents, Powell & Marks.   About three
o'clock in the morning of January 16, 1913, a fire broke out in
the store which entirely destroyed the contents.   On receiving
notice of the fire the defendant company referred the matter
of the adjustment of the loss to a special agent in the New Eng-
land territory, who procured the services of defendant Hayes, a
private adjuster not in the general employ of the defendant com-
pany, to investigate the loss.   Hayes interviewed the plaintiff
and made certain investigations respecting the validity of her
claim.   The plaintiff went to Albany, N. Y., about the first of
February.   Upon or shortly after her arrival at Albany she took
up the matter of her claim with the agents of the company and
later employed an attorney there who was entrusted with the
adjustment of the loss.   While the negotiations were pending,
Mr. Hopkins, the State's attorney of Chittenden County, filed an
information against the plaintiff charging her with having set
the fire, which is the prosecution on which this suit is based.   At
this time the plaintiff was still out of the State.   The State's
attorney applied to the Governor for requisition, but upon con-
sideration the application was denied.   Both Hayes and the

company were aware of these facts. Subsequently steps were taken involving action on the part of both defendants to bring about plaintiff's return to the State where she could be arrested on the warrant that was out against her. Advantage was taken of a provision of the policy which required her to appear for examination at a time and place appointed by the company. Plaintiff came to Burlington to keep the appointment and was arrested on the arson charge. She was later tried on the information and acquitted.

[1, 2]   The principal questions raised by the motion for a directed verdict are: (1) Whether the defendants, or either of them, were in law responsible for the institution or continuance of the original proceeding complained of; (2) if so, whether there was evidence showing want of probable cause to believe that the prosecution could succeed; and (3) whether the necessary element of malice was present. In fact, the controlling questions are only two, for the malice that will support the action, though a separate question of fact, may be inferred *prima facie* from the proof of the want of probable cause. *Barron* v. *Mason,* 31 Vt. 189. In other words, want of probable cause affords evidence of malice; but want of probable cause and malice are independent facts, each essential to the cause of action, and proof of the one will not establish the other. as a matter of law. *Carleton* v. *Taylor,* 50 Vt. 220, 229; *Briggs* v. *Burton,* 44 Vt. 124, 148; *Classon* v. *Staples,* 42 Vt. 209, 222, 1 A. R. 316.

[3, 4]   A question of vital importance in the administration of the criminal law is raised by the first ground of the motion. The question has never arisen in this jurisdiction, although it has with some frequency been before the courts of other jurisdictions in recent years. The decided cases generally deal with prosecutions based upon the affidavit or complaint of a private individual, in which case the person making the affidavit is usually regarded as the prosecutor and held liable as such. But under the present procedure for instituting criminal prosecutions in this State, where the complaint is made by a prosecuting officer elected for the purpose, a different situation arises. *Prima facie* the prosecution is instituted and conducted by the public prosecutor, and the plaintiff in a subsequent suit for malicious prosecution has the burden of showing that the defendant in such suit was directly responsible for the institution or continuance of

the proceedings complained of. It is of public concern that a citizen having reason to believe, or even suspect, that a crime has been committed be permitted to direct the attention of the prosecuting officer towards its investigation, without exposure to the peril of being held liable for malicious prosecution in case of a failure of conviction. The criminal law does not enforce itself, but requires the agency of some informant to put it in motion. It is sometimes said that the action for malicious prosecution is not favored in law, and hence has been hedged about by limitations more stringent than those in the case of almost any other act causing damage to another. A recovery is allowed only when the requirements limiting it have been fully complied with. Especially is this so where the suit is brought for the institution of criminal proceedings against the plaintiff, as public policy favors the exposure of crime, which a recovery against a prosecutor obviously tends to discourage. 18 R. C. L. 11, and cases there collected. The principles governing the rights and liabilities of the parties to an action for malicious prosecution are a compromise between the right of the individual to be free from arrest or prosecution upon a charge of which he is innocent and the right of the community to be protected from crime. *Burnham* v. *Collateral Loan Co.,* 179 Mass. 268, 60 N. E. 617.

[5] While a defendant in an action for malicious prosecution is sufficiently a prosecutor to sustain an action against him, if the prosecution to which the plaintiff is subjected is instituted by the State's attorney at the defendant's instance and request, something more is required than that the defendant be shown to have given information which set the machinery of the law in motion. *Burnham* v. *Collateral Loan Co., supra.* A defendant has not "caused a prosecution" in the sense that renders him liable when he acts only in subordination to the prosecuting attorney and under the latter's directions; nor when he states the bare facts as to the plaintiff's conduct to such attorney, leaving him to judge of the propriety of proceeding with the charge, where the attorney does not act in any way under the direction of the informant or the influence of the information thus received. The cases are in accord in holding that to sustain an action for malicious prosecution, where the proceeding complained of was begun by another, it must affirmatively appear as a part of the plaintiff's case that the defendant was the proxi-

mate and efficient cause of such proceeding.   *McClarty* v. *Bickel,*
155 Ky. 254, 159 S. W. 783, 50 L. R. A. (N. S.) 392; *Thienes* v.
*Francis,* 69 Ore. 165, 138 Pac. 490; *Malloy* v. *Chicago, etc., R.*
Co., 34 S. D. 330, 148 N. W. 598; *Western Nat. Bk.* v. *White,* 62
Tex. Civ. App. 374, 131 S. W. 828.

The necessity that the defendant be shown to be the efficient
cause of the prosecution to establish ·liability is variously ex-
pressed in the cases.   Thus, it must be shown that the prosecut-
ing officer acted under the direction or influence of the defend-
ant, *Burnham* v. *Collateral Loan Co., supra;* that the prosecution
proceeds by virtue of his authority or procurement, *Knauer* v.
*Morrow,* 23 Kan. 360; that the prosecution was instituted at the
instigation of the defendant, *Cox* v. *Lauretsen,* 126 Minn. 128,
147 N. W. 1093; that the defendant was responsible for the insti-
tution or continuance of the proceedings complained of, 18
R. C. L. 17; that the defendant's advice or procurement was the
proximate cause of the proceeding, note Ann. Cas. 1918A 487.
The late Justice Jaggard in his article on "Malicious Prosecu-
tion" (26 Cyc. 17) deduces this rule from the cases: "To sus-
tain the action it must affirmatively appear as a part of the
case of the party demanding damages that the party sought to
be charged was the proximate and efficient cause of maliciously
putting the law in motion."

In *Florida East Coast R. Co.* v. *Groves,* 55 Fla. 436, 46 So.
294, the agent of a corporation, believing that a crime had been
committed, stated all the material facts bearing on the transac-
tion, so far as he was informed of them, to the county prosecut-
ing officer with the names of witnesses who could give more de-
tailed information, leaving the officer to act on his own judgment
whether there should be a prosecution.   It was held that the
corporation would not be liable for a malicious prosecution, on
the ground that the agent only did his duty in laying the facts
before the prosecuting attorney.   In *Christy* v. *Rice,* 152 Mich.
563, 116 N. W. 200, the defendant applied to the prosecuting
attorney to institute a prosecution against the plaintiff for per-
jury and was denied a warrant until the attorney had made an
independent investigation of the facts and was informed that
the latter would act only upon his own investigation.   Later the
defendant at the attorney's request swore to a complaint which
the attorney had prepared.   The evidence was undisputed that

the attorney made full investigation on his own account and determined that there was probably cause to believe that the plaintiff was guilty of perjury. It was held that the prosecuting attorney and not the defendant was responsible for the prosecution. In *Malloy* v. *C. M. & St. P. Ry. Co.*, 34 S. D. 330, 148 N. W. 598, a detective employed by the defendant charged the plaintiff with the theft of certain coal by signing a complaint prepared by the prosecuting attorney. The evidence showed without dispute that the State's attorney, after having made a full investigation of the matter, prepared the complaint and advised the agent to ''father it.'' In holding that this eliminated any question as to the defendant's liability, the court said: ''While Sheehan (the agent) made a disclosure of the supposed facts to the State's attorney, the latter did not rely upon that disclosure. He made an independent investigation, and it can be fairly deduced from the evidence that it was because of such investigation, and not because of Sheehan's representations, that the State's attorney advised the prosecution.''

[6]   Plaintiff's counsel recognize the rule given above as applicable to the case, and the trial court submitted the issue to the jury in language that was unexceptionable, if there was evidence fairly and reasonably tending to support the claim of liability in this regard. The presence of such evidence would make the question one of fact for the jury; but the burden being with the plaintiff, failure to make the necessary proof is a valid ground of a motion for a directed verdict.

[7]   The only basis of the claimed liability of the defendant company was the conduct of Hayes as its agent. So, if on the evidence Hayes should be exonerated, the company cannot be held liable. For the present then we are only concerned with Hayes' relations to the prosecution. Was there evidence on which a jury would be justified in finding that he was the proximate and efficient cause of the institution or continuance of plaintiff's prosecution? There was no suggestion in the evidence that the State's attorney acted in any other capacity than as a public prosecutor. The ultimate question is whether there was evidence fairly tending to show that Hayes' conduct in the matter in any way exerted a controlling influence over the action of Hopkins as a public prosecutor. Naturally the testimony of Hopkins was of primary importance on this issue. From his

testimony it appeared that the circumstances of the fire were first called to his attention by Charles A. Niles, Chief of the Burlington Fire Department, the last of March or early in April, 1913, more than two months after the fire, in a conference with Niles relating to fires. He detailed the information received from Niles, which included the statement that Hayes had had an interview with the plaintiff and knew something about her claims in the matter. Hopkins consulted with the Attorney-General respecting an investigation and with his approval employed two detectives for that purpose. Later, he instituted an inquest under the statute before one of the assistant judges, as he testified, "to obtain the evidence for the State and to determine whether there was probable cause for a prosecution." Numerous witnesses were examined at the inquest, but Hayes was not included in the number. Finally, as a result of these investigations which continued till about the middle of May, Hopkins "formed an opinion" that the fire was incendiary and that it was probably the plaintiff that set it. Pursuant thereto he issued the complaint on which the plaintiff was prosecuted. Hayes made no complaint to Hopkins and the only statements from him to the latter in regard to the fire were in writing. Hopkins started his investigations from the information received from Hayes—"had the detectives see the information that he gave in typewriting as a starting point for an investigation"—but in his official action in making the complaint did not act upon what Hayes said or did. Before taking action, Hopkins took steps to investigate the facts recited in Hayes' report, but did not inquire of the plaintiff concerning alleged statements made by her to Hayes, though he made investigations covering the same matters. In brief, Hopkins testified that he had everything contained in Hayes' statements investigated that was capable of investigation and would throw any light on the case. Asked what he acted upon when he made the complaint, Hopkins testified in substance that he acted upon the matters that Niles had given him as confirmed by the inquest, the evidence given by the witnesses at the inquest, and the mass of information obtained through the detectives. The conclusive effect of Hopkins' testimony is at once apparent. He alone could know what influenced his action and he would have no possible motive for any attempt to relieve the defendants of responsibility. There was nothing

in the evidence to cast doubt on his testimony.  While counsel criticized the method employed to secure the plaintiff's arrest and what they characterize as an attempt to justify his own and the defendant's participation therein, they do not suggest that his testimony was in any way discredited.  Indeed, much that we have referred to was brought out on their cross-examination.

In spite of repeated attempts to get him to admit that he acted on the strength of Hayes' statements, the most the plaintiff was able to show was that such statements were merely used as a basis for investigation.  It could not be fairly claimed on the evidence that Hayes' statements, either in writing or as communicated through Niles, were in any true sense the proximate and efficient cause of plaintiff's prosecution.  The fair import of Hopkins' testimony was an unqualified assumption of full responsibility for the institution and subsequent prosecution of the criminal charge against her.  It appeared from Niles' testimony that he talked with the State's attorney about this fire at Hayes' request; that Hayes had talked with him several times about the plaintiff having set the fire and said he thought he had a case against her.  It did not appear, however, that these facts were communicated to Hopkins, and so they could not have influenced his action.

[8]   Much is made of the claim that Hayes did not fully and truthfully report to Hopkins what the plaintiff told him in his interview with her.  In her testimony the plaintiff denied having told Hayes certain things which the latter reported to Hopkins as coming from her and claimed to have told him certain other things that were omitted in his report.  In some circumstances the issue thus raised would take the case to the jury.  The rule invoked by the plaintiff that to escape liability an informant must fairly and truthfully disclose to the prosecuting attorney all matters within his knowledge which, as a man of ordinary intelligence, he is bound to suppose would have a material bearing upon the question of the innocence or guilt of the person suspected, though well settled, has its limitations.  It would apply where the action taken by the prosecuting attorney was influenced by the facts disclosed; in which case, the question is one of probable cause as affected by advice of counsel.  But, as here, where the action of the prosecuting attorney was uninfluenced

by the disclosure, the issue raised by the evidence would be wholly immaterial.

[9]   The circumstances attending the arrest and subsequent prosecution of the plaintiff present a somewhat different feature of the motion for a directed verdict.   Shortly after the application for requisition had been denied by the Governor, Hayes and Hopkins had a meeting at Burlington at which measures for getting the plaintiff within the reach of process were devised. There was no substantial disagreement in the testimony respecting the relations of the parties to this transaction.   Hopkins testified that, to prevent what he deemed a miscarriage of justice, he at once after his application for requisition was refused, set about finding some way to secure the plaintiff's arrest.   After consulting with the Attorney-General he wrote to Hayes thinking to get some information or assistance from him.   In brief, he told Hayes that the Governor had refused requisition, that he wanted to have the plaintiff arrested, and asked if he would inform him should the plaintiff return to the State.   Either by letter in reply or in the subsequent interview at Burlington, Hayes called attention to a provision of the policy under which the plaintiff could be required to come to Burlington for examination and proposed a scheme to get her to come back so that she could be arrested.   Hopkins approved of the plan and asked Hayes to assist in carrying it out.   During the interview Hayes raised the question whether, if he should give the assistance proposed, it would make him liable to a prosecution or to an action. Hopkins told him that the Governor had "turned down" the requisition without just cause, in his judgment; that on the evidence and information in his possession there was probable cause for the prosecution; that by all means he thought the plaintiff should be prosecuted and every means taken to apprehend her; that it was Hayes' duty as a citizen to render all the assistance he could in that respect; that he certainly would not make himself liable by doing so, as there was no question whatever about there being probable cause for the prosecution, in which case he could not be liable for any assistance that he should render in getting the plaintiff apprehended in any possible way it could be done.   Hayes finally agreed that the company would have the plaintiff in the State at some time for an examination, or for an adjustment or settlement of her claim, when Hopkins

would be notified that he might have her arrested. It was pursuant to this plan that plaintiff's arrest was finally effected. Hayes wrote the plaintiff inviting her to meet him at Burlington with the view of reopening negotiations for a settlement and saying, "I think we can settle the matter." Plaintiff through her attorney declined the invitation and wrote the president of the company requesting the appointment of another adjuster and a meeting either in Albany or at the home office of the company. Correspondence between the plaintiff's attorney and the company ensued respecting further proof of loss culminating in a notice requiring the plaintiff to submit to examination under oath by Hayes at Burlington at a time and place named, pursuant to the provision of the policy. Plaintiff's attorney at first refused to comply with the requirement but, the company insisting, later acceded and had the plaintiff at the place appointed, where she was arrested at Hopkins' direction. As agreed, Hayes had notified Hopkins when the plaintiff would be in Burlington.

The actions of Hayes and the company in this connection did not make either of them liable as prosecutors of the criminal charge. The company was acting strictly within its rights under the policy; and, so far as anything Hayes did personally or as a representative of the company, he was acting at the request and under the direction of the prosecuting officer. Hopkins and not the defendants determined that the prosecution should continue in spite of the Governor's action. There was no evidence fairly tending to show that anything that either of the defendants said or did in the slightest degree influenced his judgment in this regard. There was no time when it could be said that the prosecution received a fresh impulse from an outside source. It was begun and continued throughout under the direction and control of the State, represented by the State's attorney and his advisor, the Attorney-General. They made use of Hayes as a means of accomplishing their purpose and never for a moment even ceased to be the "proximate and efficient cause" of the continuance of the prosecution. Whether they were justified in the means adopted to secure the plaintiff's arrest is beside the question. They were in possession of all the facts disclosed by an independent investigation, much of which, so far as appears, may have been unknown to either of the defendants, and as ex-

perienced attorneys had determined that probabe cause existed for pressing the prosecution. Their mistakes, if such there were, cannot be charged against the defendants in this action. Whether they had probable cause was not an issue in this case and is not open to investigation. It is claimed by the plaintiff that there was evidence tending to show that the defendants actively participated in the deception practiced upon her to make her arrest possible, without which the prosecution could not have proceeded, and so were in law responsible for the continuance thereof. It must be conceded that on the evidence Hayes acted with full knowledge of the ultimate purpose of the requirement that the plaintiff come to Burlington for examination. There was also evidence from which the jury might reasonably infer that some of the principal officers of the company had knowledge of the plan. But, in the circumstances, this does not affect the result. The claim disregards the fact conclusively established that the defendants were not acting voluntarily but at the solicitation and under the directions of the State's attorney, in which case, as we have already seen, the defendants are not liable as for a malicious prosecution.

It must be held that the plaintiff failed to discharge the burden of showing that the defendants, one or both, were legally responsible either for the institution or continuance of the prosecution complained of. The defendants' motion for a directed verdict should have been sustained. This holding makes it unnecessary to consider the other questions raised by the exceptions.

*Judgment reversed and judgment for the defendants to recover their costs.*

## ON MOTION FOR REARGUMENT.

After the foregoing opinion was handed down counsel for the plaintiff had leave to file a motion for reargument, pending which the entry of judgment has been withheld.

[10-14] For the most part the motion offends the well recognized rules respecting motions for reargument. It is not enough to assert that the Court has failed to consider "certain evidence in the record" tending to support the plaintiff's claim at the hearing, but the motion must point out specifically ma-

terial evidence then relied upon which it is claimed the Court has overlooked. *Manning* v. *Leighton,* 66 Vt. 56, 28 Atl. 630; *Powell* v. *Merrill,* 92 Vt. 125, 130, 103 Atl. 259; *Wilson* v. *Barrows,* 96 Vt. 344, 119 Atl. 422, recently decided. Nor is such shortage in the motion aided by the brief filed in support of it. *Powell* v. *Merrill, supra.* Moreover, plaintiff's counsel misconceive the scope of such a motion. A rehearing is not granted for the purpose of affording opportunity to present new questions. *St. Albans* v. *Avery,* 95 Vt. 249, 265, 114 Atl. 31, and cases cited. And where there was occasion and opportunity for raising the point at the hearing, the rule applies equally to one not the excepting party. *Hawkins* v. *Wilson,* 94 Vt. 417, 420, 111 Atl. 634; *Spaulding* v. *Mutual Life Ins. Co.,* 94 Vt. 42, 54, 109 Atl. 22; *Shortsleeves* v. *Troville,* 95 Vt. 468, 117 Atl. 819. Besides, the brief which counsel had leave to file in support of the motion is in no way such a brief as our practice contemplates. It contains 35 printed pages mainly devoted to argument and wholly failing to direct attention to claims made in the original brief respecting the matters complained of. Much as the Court desires that a litigant should avail himself of the right of argument to the fullest extent that error in the judgment may be avoided, when a case has been fully presented, has received consideration by the Court and has been decided, the appropriate time for argument has passed. The object of the motion by the defeated party for a reargument is to point out wherein it is thought the Court has erred in disposing of the questions argued. As no new question can be raised on a reargument, the motion is confined to points that have been presented in the brief and argument thereon. The rule gives ample opportunity to point out matters relied upon at the argument that are thought to have been overlooked or misapprehended by the Court; but pending the motion any discussion of the grounds thereof is uncalled for and can serve no useful purpose. Leave to file briefs in support of the motion does not open the door to argument of the grounds of the motion, for such a practice would turn a motion for opportunity to reargue into reargument itself. The only legitimate object of such a brief is to direct the attention of the Court to those portions of the brief on argument which are relied upon in support of the motion. We are prompted to reiterate what has so often been said respecting these matters by the growing

tendency to depart from well established rules and to subvert the true purpose of motions for reargument. This practice cannot be countenanced for reasons that are manifest.

[15] When, as in this case, a voluminous transcript is made the record, failure to point out in the brief on argument the evidence relied upon places an unnecessary burden on the Court of searching for evidence to support the judgment. Indeed, our rule so often announced does not require the Court to search the transcript to see if anything can be found to support the judgment. *Davis* v. *Boston & Maine R. Co.,* 86 Vt. 205, 208, 84 Atl. 818. But it should not be assumed that the record has not been searched, notwithstanding such failure. The plaintiff has no occasion to complain in this case for the transcript was carefully searched for any evidence fairly tending to show that Hopkins did not act throughout the prosecution on his own judgment as a public prosecutor, which was the vital question in the case as presented. We could very properly dismiss the motion without saying more; but to make certain that no point relied upon in the brief on argument had been overlooked it has been carefully re-examined.

The claim that the prosecution on which the action is based was instituted and conducted by Hopkins as State's attorney was insisted upon by the defendants at the trial and was fairly presented in their brief in this Court. The plaintiff's answer to the claim was in effect that there was evidence tending to show that the defendants instigated the prosecution and voluntarily furthered it throughout. However, the evidence relied upon did not meet the requirements of the law applicable to a case where the proceeding complained of is commenced and prosecuted by the State's attorney. For cogent reasons it is held that in such case the plaintiff in a subsequent suit against a third party for malicious prosecution has the burden of showing that the defendant was directly responsible for the proceeding in the sense that he was the proximate and efficient cause of the prosecution. Short of this one who may have been instrumental in setting the law in motion cannot be made liable as for a malicious prosecution. The thing complained of is the act of another—the State's prosecuting officer—for which he is not legally responsible unless it is shown that his conduct so influenced the action of the prosecutor as to be the proximate and efficient cause of the

prosecution. The brief on argument calls attention to no evidence fairly and reasonably tending to meet the defendants' claim that they were not legally responsible for the prosecution. The evidence referred to as tending to show that the defendants voluntarily furthered the prosecution also comes short of making a case of liability. Plaintiff proceeded upon the theory that it was only necessary to show that the defendants acted voluntarily in the sense that they acted without compulsion. But that is not the test of liability where the State's attorney is prosecuting, as already sufficiently appears.

[16] Respecting the claim advanced in the motion that Hopkins was a joint tort-feasor with the defendants, it is enough to say that it comes too late to be available as a ground for reargument. While it is conceivable that a case might arise in which the complainant and the prosecuting officer would be jointly liable, such was not the theory on which this case was tried below or argued here. Manifestly a new question is presented by this ground of the motion.

[17] Finally, what is said concerning the effect given Hopkins' testimony overlooks several important considerations. It is not claimed that there was any conflict in the evidence respecting what Hopkins did, but the point is made that a jury would not be bound to believe what he said and would be at liberty to infer (against the fair import of his testimony) that the defendants instigated the prosecution and voluntarily furthered its continuance. Counsel fail to take into account the presumption attending official actions, which are presumed to be regular unless the contrary is made to appear. *Sargent* v. *Shepard,* 94 Vt. 351, 111 Atl. 447. The presumption is, of course, rebuttable; but it stands until overcome by evidence. *McKinstry* v. *Collins,* 76 Vt. 221, 233, 56 Atl. 985. It cannot be removed by mere argument. The important, if not controlling, matters developed by Hopkins' testimony related to what he did. Starting with Hayes' written statement as a basis of investigation, he employed the means provided by law to determine whether there was probable cause for the prosecution. It must be presumed, the contrary not appearing, that his investigations disclosed probable cause. The fact that he thereupon issued the information and persisted in pressing the prosecution is sufficient of itself to show that he assumed the responsibility. That he in effect so testified

merely confirms a fact otherwise established. We take occasion to call attention to these matters although the point was not made at the argument.

                                        *Motion overruled.*