FLORIDA EAST COAST RAILROAD COMPANY, A CORPORATION, *Plaintiff in Error*, v. W. C. GROVES, *Defendant in Error*.

1. Two elements must be proven by a plaintiff in a suit for damages for a malicious prosecution viz: (1) malice in the prosecutor, and (2) a want of probable cause, and where the proof fails to establish both of these elements, such a suit must fail.

2. In a suit for damages for a malicious prosecution, where there is no dispute about the material facts, the question of probable cause is one of law.

3. In a suit for damages for a malicious prosecution, where the evidence fails to show a want of probable cause in the prosecutor, he is entitled to an affirmative charge in his behalf.

4. Where the agent of a corporation, believing that a crime had been committed, states all the material facts bearing on the transaction so far as he was informed of them, to the prosecuting officer of a county, and furnishes him the names of witnesses, who can give more detailed information, and leaves it to the officer to act on his own judgment and responsibility as to whether there shall be a criminal prosecution, and does no more, the fact that the prosecuting officer may make a mistake in instituting a criminal prosecution does not affect the *bona fides* of the agent, and the corporation cannot be held liable for a malicious prosecution.

This case was decided by Division B.

Writ of Error to the Circuit Court for Dade County.

The facts in the case are stated in the opinion of the court.

*Geo. M. Robbins,* for plaintiff in error;

*Geo. A. Worley,* for defendant in error.

HOCKER, J.—W. C. Groves, called herein the plaintiff sued the Florida East Coast Railroad Company, herein called the defendant, in the circuit court of Dade county for damages for an alleged malicious prosecution and recovered a judgment for $3,500. The writ of error is from this judgment.

The declaration in substance alleges that the defendant in the month of December, 1906, did unlawfully and maliciously and without any reason or probable cause

make complaint in said county (Dade) before the prosecuting officer of the county court in and for said county; that the plaintiff did on or about the......day of December, 1906, entice away from the service of the railroad company certain employes, and did procure an information to be filed in the office of the clerk of the county court, charging the plaintiff with an offense against the laws of Florida, to-wit, enticing away labor, procured a warrant to be issued and placed in the hands of the sheriff and caused the plaintiff to be arrested and taken into custody, forcing the plaintiff to give bond for his appearance at the January term of said court for 1907; that plaintiff appeared at said term of court demanding trial, and defendant failed and refused to appear and prosecute the plaintiff, and that the said charges against the plaintiff were dismissed by the prosecuting officer, and the cause finally disposed of in favor of the plaintiff whereby his innocence was established and no further prosecution has been instituted against the plaintiff, and he has been discharged from further appearance in the case. The declaration sets up various claims of special damage. The defendant filed a plea of not guilty, and a plea denying that it made a complaint before the prosecuting officer of Dade county and procured an information to be filed charging the plaintiff with an offense against the laws of Florida, to-wit, enticing away labor, and also a plea of another action pending in which the same items of special damage are claimed. Issue was joined and a trial had by a jury resulting in the above mentioned judgment.

The only assignment of error we deem it necessary to consider is the first, viz: The court erred in denying defendant's motion to instruct the jury to find for the defendant. A proper consideration of this assignment requires us to review the evidence bearing upon the question whether the defendant had probable cause for

the prosecution of. Mr. Groves for enticing laborers and servants in the employment of the former to violate their contract of service.

The statute defining the offense, of enticing servants is Section 3232 of the General Statutes of 1906, and is as follows:

"3232.   Enticing Servants.—Whoever shall entice or persuade by any means whatsoever any tenant, servant or laborer, under contract with another, whether written or verbal, to violate such contract, or shall employ any servant or laborer, knowing him or her to be under contract as aforesaid, shall be punished by imprisonment not exceeding sixty days, or by fine not exceeding one hundred dollars."

Two elements are necessary to sustain a suit for malicious prosecution: (1) Malice in the prosecutor, and, (2) a want of probable cause. Lewton v. Hower, 35 Fla. 58, 16 South. Rep. 616. Where there is no dispute as to the facts, the question of probable cause is one of law. Lewton v. Hower, *supra*.

Mr. Groves, the plaintiff, testified at the trial that he was thirty-two years old—his occupation is railroad work, as constructing foreman. In November and December, 1906, he was living at Umbrella Key in Florida, employed by the East Coast Railroad Company up to the 12th of December, 1906, had charge of Camp No. 2 or No. 8 on Umbrella Key, was head foreman of the camp, had about one hundred and fifty men under him on the average. About this time he sent in his resignation to Mr. Meredith, the construction engineer, and it was accepted. Pretty near all the negroes under him resigned or quit work. He then testifies at considerable length about the difficulties he had with the defendant in getting the negroes to Miami. He finally got to Miami with the negroes, where he was arrested under a warrant for enticing laborers from the East Coast Rail-

way.   He gave bond, and the next day saw Mr. Mere-
dith and had a conversation in which there was some
crimination and recrimination, and in which Meredith
told him he was going to swear out more warrants.   In
his testimony on the direct examination he denied en-
ticing the men from the employment of the railroad com-
pany, and that the company had issued discharge checks
to some of the men he brought up. The plaintiff says that
the men he worked on Windless Key were mostly men
he had recruited.   He recruited the men in Georgia. The
plaintiff admits that he put up a notice on the office of
the engineer or on the commissary, which are close
together, "that all the men that wanted to go with
him could get the same salary they were getting there,"
which was $1.50 per day, and full transportation after
they got to Jacksonville, and that he was recruiting to
take away the very men the railroad company had paid
him for bringing down there, and that the company
needed the men.   His defense of his action is that the
company was reimbursed by the men for transporta-
tion.   He says these men had worked for him for years.
Mr. Meredith, in his testimony, says that "this question
was up from the time Groves was up here (Miami)
making arrangements from the 4th of December, until
we got information on the 13th of December, that he
actually taken the men out."     He also says the
telephone between Miami and Windless Key was not in
good order.   The plaintiff does not fix the date when
he put the notice up on the office or commissary inviting
the men to go with him, nor does any other witness.
The plain meaning of the notice, however, is that it is
addressed to men then in the employment of the defend-
ant at $1.50 per day.

It is insisted in argument here that the men taken away from Windless Key by Mr. Groves had all resigned before he recruited them, but there is no evidence in the record to show that fact.    The plain inference is otherwise.

Mr. J C. Meredith was introduced as a witness by the defendant and testified that he was the constructing engineer for the Key West Extension in December, 1906, and January, 1907; that in December (about the 13th), he saw Mr. Taylor, the prosecuting attorney about the enticing of labor away from the Key West Extension by Mr. Groves; that he told Mr. Taylor he had information that Groves was going to take out most of Camp No. 2; that "we" had brought those men down there, and he didn't think Mr. Groves had any legal right to take them away; that he asked Mr. Taylor what the state could do to protect the company against Mr. Groves taking them away; that he gave Taylor the information he had over the telephone; that Groves was making arrangements to take the men away; that Groves had chartered a vessel, and had taken out one hundred and ten men and they were on their way to Miami; that he stated to Mr. Taylor the camp was in Monroe county; that Mr. Taylor looked up the law and said he thought he had a clear case against Groves; that he thought the offense a continuing one. and the court here (Dade county) would have jurisdiction of it; that he made no affidavit for a criminal prosecution and was not sworn as to the facts; that he didn't ask to have Groves arrested, but simply stated the company wanted protection against the taking away of the men; that he left the course to be pursued entirely to Mr. Taylor's judgment; that he told Taylor all he had heard about the recruiting of the men and about Mr. Groves enticing them

away; that he could give no direct information about Groves' movements and gave Taylor the names of other witnesses, *viz*: Mr. Strunk who was at the passenger station, Mr. Yancy at Camp No. 8, and Mr. Rogers; that he does not know whether any one else went before Mr. Taylor, and does not know what other information he obtained. Mr. Meredith insists he told Mr. Taylor, the prosecuting attorney, of Dade county, all he knew about the matter.

Mr. Robert R. Taylor was sworn as a witness for the defendant and testified that he was the prosecuting attorney for Dade county in December, 1906, and that he filed the information against W. C. Groves under Section 3232 of the General Statutes of 1906. He says that Mr. Meredith came to him and had a lengthy conversation about Mr. Groves enticing away the laborers from the Extension; that he could not give Mr. Meredith's exact language, only the general tenor; it was to the effect that Mr. Groves had taken a lot of negroes away from a camp down in Monroe county—at least he thought it was in Munroe county at that time. Mr. Meredith said he did not think it was right for the company to go to the expense of getting these laborers down there, and they should be taken away in this manner, and he flared up and got mad. Mr. Taylor then said to Mr. Meredith, what you tell me is hearsay, you don't know any of these facts. Meredith then gave Taylor a list of witnesses to see—two of them then in town—one was Mr. Strunk, and the other a foreman or something. Mr. Taylor says he saw Mr. Strunk and also a Mr. Yancy, who gave him the names of twenty-five or thirty negroes. He thinks he filed the information the next day and shortly after saw a large number of negroes with Mr. Groves in Mr. Worley's office. He had the wit-

nesses subpoened and thought then he had a good case and still thought so—that Mr. Groves was wrong in enticing these men away.

The information appears to have been filed on the 13th day of December, and the warrant was issued on the same day. Mr. Taylor explains that when the case against Groves came on for trial in January, he made an application for a continuance on the ground of the absence of a material witness; that the court refused his motion and he entered a *nolle prosequi* in the case; that if Mr. Groves objected he did not hear him; that the railroad men poured water on the prosecution and if it had not been for that, he thinks he could have convicted Groves. He says he supposed they would furnish the witnesses, but they did not do it—just left the whole matter with him (Taylor). He says that Mr. Meredith offered him no inducement to prosecute Groves; that he just stated what he had heard and left it to his (Taylor's) judgment; that all that Meredith knew had been furnished by other parties and he gave the names of those people. Mr. Taylor also says that Mr. Meredith told him Groves had been in the employment of the company and had been discharged; that he supposed Groves was trying to get even with the company for discharging him, or words to that effect. Mr. Taylor also testified that he never filed an information to have a man arrested "on his own hook" unless he had talked with the witnesses.

Mr. Meredith was recalled and testified that Mr. Groves resigned at his request, and that it was a question of vital interest "for us to know" and we tried to know everything that was going on down there; and that he did not know the men had gotten their time checks until they brought them in for payment. Mr. Meredith states that Groves resigned at his request. It appears from Meredith's testimony, and that of Groves, that the

company did not approve the discounting by Mr. Groves and others of pay checks given the negroes by the railroad company, and that was not satisfactory to Mr. Groves. He, however, denies that he was discharged. He says he resigned. It is evident that this trouble led to the severance of Groves' relation with the defendant. After this occurred he applied for employment for railroad building with Mr. Oliver of Knoxville, Tennessee, a railroad contractor. Mr. Groves says he lost this employment by reason of the prosecution against him. This circumstance throws light upon the notice to laborers which he put up on the office or commissary at Windless Key and tends strongly to show that he intended to carry away with him the laborers he had brought there, and who were then in the employment of the defendant. It is evident he had a great influence with these men, for no other reason is given for their leaving the service of the defendant than that Mr. Groves wanted them to go with him. It is a matter of common knowledge that the Key West Extension of the East Coast Railroad is being constructed from the main land near the southern end of the Florida peninsula along and upon the keys or chain of coral islands running in the direction of Key West.

The law applicable to this case we have seen to be that the plaintiff must show affirmatively, first, malice in the prosecutor, and, second, a want of probable cause for the prosecution. See, also, Gorton v. DeAngelis, 6 Wendell (N. Y.) 418; Lancaster v. Langston, 18 Ky. Law 299, 36 S. W. Rep. 521; White v. Shradski, 36 Mo. App. 635.

"Probable cause consists of such reasons as are sufficient to create a reasonable belief that a crime has been committed and that the party charged was connected therewith." Cockfield v. Braveboy, 2 McMullan's Law, 270, S. C. 39 Am. Dec. 123. In Bacon v. Towne, 4

Cush. (Mass.) 217, Chief Justice Shaw, defines probable cause as "such a state of facts in the mind of the prosecutor as would lead a man of ordinary caution and prudence to believe or entertain an honest and strong suspicion that the person accused is guilty." Says Chief Justice Marshall in Faris v. Starke, 3 B. Mon. (Ky.) 4, text 6, "If every man who suffers by the perpetration of a crime, were bound under the penalty of heavy damages, to ascertain before he commences a prosecution, that he has such evidence as will insure a conviction, few prosecutions would be set on foot, the guilty would escape while conclusive evidence was sought for; offenses of every grade would, for the most part, go unpunished, and the penal law would be scarcely more than a dead letter. The law, therefore, protects the prosecutor if he have reasonable or probable cause for the prosecution, that is, if he have such ground as would induce a man of ordinary prudence and discretion, to believe in the guilt and to expect the conviction of the person suspected, and if he acts in good faith on such belief and expectation." See, also, 1 Cooley on Torts (3rd ed.) p. 323, *et seq.*

It is shown also that Mr. Meredith stated the facts as he understood them to Mr. Taylor, the prosecuting attorney of Dade county, and simply asked protection for his company and left the question of prosecution to Mr. Taylor's judgment, who decided that there was a good case against Groves, and that he could be prosecuted in Dade county. He did not pretend to know the facts of his own knowledge, and gave Mr. Taylor the names of witnesses whom Mr. Taylor consulted before filing the information. It is contended, however, that Mr. Meredith did not make a full and fair statement of the existing facts to Mr. Taylor, in that he did not tell him the negro laborers had severed their connection with the company, and had their pay checks and discharge tickets.

We think in view of the evidence that it is not clear Mr. Meredith knew of these facts, and moreover, if he did, they have no bearing whatever upon Mr. Groves' previous action in getting them to leave the employment of the defendant. We think the evidence clearly shows that Mr. Meredith stated every material fact bearing on the transaction to Mr. Taylor. The fact that Mr. Taylor may have been mistaken in instituting the prosecution in Dade county does not affect the bona fides of Meredith.

In the case of Burnham v. Collateral Loan Co., 179 Mass. 268, 60 N. E. Rep. 617, it is held: "One who, believing that a crime has been committed, sends for a police inspector, and fairly and truthfully discloses to him all matters within the speaker's knowledge, which he supposes to have a material bearing upon the question of the innocence or guilt of the person suspected, and leaves it to the officer to act upon his own judgment, and responsibility, as to whether or not there shall be a ·criminal prosecution, and does no more, cannot be held answerable in an action for a malicious prosecution, in case the officer comes to a wrong conclusion and ·prosecutes when he ought not to do so." It is also said that "such a person does no more than his duty; and to hold him answerable in an action for· malicious prosecution for the result of the mistake or misconduct of the officer would be to make the division line of compromise between the right of the individual to his liberty and the right of the public to protection trench too far upon the domain of the latter." 1 Cooley on Torts (3rd ed.) p. 329 et seq.; Ross v. Hixon. 46 Kan. 550, 26 Pac. Rep. 955, 26 Am. St. Rep. 123, and important note pp. 127, 128, 129, 130.

We have given the plain facts of this case and the law applicable thereto careful investigation and we think the court erred in not giving the affirmative instruction

for the defendant.   The plaintiff, in our judgment, not only utterly failed to show that Meredith, the engineer and agent of the defendant did not have probable cause for the prosecution, but on the contrary the evidence shows he did have such probable cause.   Not only so but the defendant in laying the facts before the prosecuting attorney of Dade county, and leaving the question as to whether there should be a prosecution in Dade county, did all he could be expected to do, and only did his duty.

The judgment of the circuit court is reversed.

TAYLOR, and PARKHILL, JJ., concur;

SHACKLEFORD, C. J., COCKRELL and WHITFIELD, JJ., concur in the opinion.