# Abingdon Mills *v.* Grogan.

### *Malicious Prosecution.*

(Decided June 15, 1911.  Rehearing denied December 21, 1911.
57 South. 42.)

1. *Malicious Prosecution; Defense; Consulting Attorney.*—The fact that defendant consulted a reputable attorney before instituting the alleged prosecution and that the attorney advised the prosecution is not of itself a complete defense to an action for malicious prosecution.

2. *Same; Evidence.*—Where the action was against a corporation for malicious prosecution on a charge of enticing defendant's employees away, it was competent for plaintiff to show that the deputy sheriff who arrested him was appointed at defendant's request as shedding light on whether he was acting as defendant's agent in arresting plaintiff, and not in his official capacity.

3. *Same; Jury Question.*—Under the evidence in this case it was a question to be determined by the jury whether the prosecution was instituted in good faith on advice of counsel.

4. *Same; Probable Cause.*—The evidence examined and held not to show that there was probable cause for belief on defendant's part that plaintiff was guilty of the offense for which he was prosecuted.

5. *Same; Punitive Damages.*—Punitive damages may be recovered for a malicious prosecution.

6. *Damages; Punitive; Jury Question.*—The amount of damages allowable in an action for malicious prosecution is a question for the jury under proper instruction; punitive damages being recoverable.

7. *Appeal and Error; Objection Below; Necessity.*—An objection that evidence was a mere opinion or conclusion cannot be first asserted on appeal where the objection below was upon another ground.

APPEAL from Madison Law and Equity Court.

Heard before Hon. TANCRED BETTS.

Action by E. R. Grogan against Abingdon Mills for damages for malicious prosecution. Judgment for plaintiff and defendant appeals. Affirmed.

COOPER & COOPER, and PAUL SPEAKE, for appellant. Under the evidence defendant was guilty of the offense for which he was prosecuted.—3 Words & Phrases, 2410; 8 Id. 7651; 99 N. W. 541; 9 N. W. 487. Charges 11 and 12 should have been given.—*Fleming, et al. v. L. & N.*, 148 Ala. 527; *Lynch v. Sneed*, 21 L. R. A. (N. S.) 852; *Fla. E. C. R. R. Co. v. Grove*, 46 South. 294; *Bacon v. Townes*, 4 Cush. 217; *Farris v. Starkes*, B. Monroe 4. Under the evidence in this case the question of probable cause was one for the court.—*Rich v. McInery*, 103 Ala. 357; *McDaniel v. Cain*, 48 South. 52; *Lundsford v. Dietrich*, 86 Ala. 250; *Sanders v. Davis*, 153 Ala. 375; 26

[Abingdon Mills v. Grogan.]

Cyc. 26; *Shannon v. Sims*, 146 Ala. 678. Advice of counsel was a full and complete defense.—*Shannon v. Sims, supra; Abingdon Mills v. Grogan*, 52 South. 596; *O'Neal v. McKenna*, 116 Ala. 606; *Motes v. Bates*, 80 Ala. 382.

DOUGLAS TAYLOR, M. H. LANIER, and P. I. DRAKE, for appellee. This cause should be affirmed on the authority of *Abingdon Mills v. Grogan*, 52 South. 596. Advice of counsel is not always a complete defense.— *McLeod v. McLeod*, 73 Ala. 42. The court was not in error in refusing a new trial because of the size of the verdict.—*Nat. Sur. Co. v. Mabry*, 149 Ala. 217. Objections not raised to evidence in the lower court cannot be advanced for the first time on appeal.—*Rhodes v. King*, 52 Ala. 272.

MAYFIELD, J.—This was an action by appellee against appellant to recover damages for malicious prosecution. The case was ultimately tried on counts 1 and 3. There are no special pleas to these counts. Each declares upon a separate prosecution. This is the second appeal in this case; the first being reported in 167 Ala. 146, 52 South. 596. A number of the questions presented for review on this, the second appeal, were decided in the former; and as to these we see no reason to depart from our ruling heretofore announced.

The first insistence is that the plaintiff was guilty of enticing away employees of the defendant. This was the offense for which he was prosecuted; or at least the evidence showed conclusively that there was probable cause for believing him to be guilty of such offense, and that therefore the defendant should not be held liable to a civil suit for instituting this prosecution against the plaintiff.

[Abingdon Mills v. Grogan.]

We cannot agree with counsel in this contention. It was ruled on the former appeal in this case—if not expressly, by necessary implication—that under the evidence this was a question of fact for the jury, and that the trial court properly submitted it to the jury, under correct instructions. And there is no such difference between the evidence adduced on the first trial and that brought out on the second as to warrant the court's withholding this question from the jury.

The plaintiff, when arrested on these charges, waived a preliminary trial and gave bond to appear and answer any charge that might be preferred by the grand jury. The grand jury failed to indict the plaintiff, in either case, for the offense charged, but did return an indictment against him for carrying on the business of emigrant agent without a license—which of course, was an offense separate and distinct from that of which he was charged.

It is next insisted that the prosecution of the plaintiff was instituted by the agents of the defendant, on the advice of reputable practicing attorneys, given on a full and fair statement of all the facts known to the affiant, or which by proper means could have been ascertained.

It is sufficient to say, as to this insistence, that whether or not that was done in the manner, to the extent, and with the purpose, to make it a complete defense to the action, was a question of fact for the jury, and not one of law for the court; and that the court did not err in submitting these questions to the jury under proper instructions, which the trial court seems to have given.

The mere fact that a person desiring to institute a prosecution consults a reputable attorney before so doing, and that such attorney advises the prosecution, does

[Abingdon Mills v. Grogan.]

not of itself amount to a complete defense to an action for maliciously instituting such prosecution. All this might be done, and yet the prosecution be maliciously instituted.

Whether the affiant made a full and fair statement of the facts to the attorney, whether he used proper diligence in order to ascertain the facts, and whether he consulted the attorney for the purpose of obtaining the advice of such attorney and acting upon it rather than upon his own judgment, or for other motives, were in this case (and are usually) questions of fact for the determination of the jury.

All the evidence in this record has been carefully read and considered, and we have reached the conclusion, not only that the trial court correctly submitted these questions of fact to the jury, but also that the action of the court was proper, in declining to award a new trial on account of insufficiency of the evidence, or on the ground that the jury acted contrary to the instructions of the court upon this question.

We do not think that the court erred in allowing secondary proof as to the contents of the affidavit and warrant. The case was reversed on the former appeal, and one of the grounds of the reversal was the admissibility of this secondary evidence.

The trial court evidently attempted to comply with the rule announced by this court on the former appeal, as to the admission of such evidence. The secondary proof was made by the officer who issued the warrant, and before whom the affidavit was taken, and he, of course, was the proper custodian of it. He testified that it was lost, and that he had made unavailing search for it; that the papers had gone up to the grand jury; and that the lost papers were not those of which plaintiff was custodian, but were quasi records of the proceedings in the justice court.

It is insisted in the argument by the appellant that the secondary evidence of the witness, as to the contents of the affidavit and warrant, was a mere opinion or conclusion. This was not one of the grounds of objection assigned to the introduction of such proof, nor of the motion to exclude, and that question cannot be raised, for the first time, on appeal. The trial court evidently did not have that question presented to it for decision.

It was ruled on the former appeal that the fact that Sanders, one of the defendant's agents, was appointed a deputy sheriff at the instance of the defendant, was a material inquiry. We can see no reason to recede from what we then said upon that question. The facts that the defendant's agent was thus, as its request, appointed to be a deputy sheriff, and that this agent, as such deputy, arrested the plaintiff under the warrant, the basis of this prosecution, were certainly a material inquiry upon this trial. Hence there was no error in allowing proof to be made as to such facts. As was said in this court in the former opinion, if he acted in the matter solely as a deputy sheriff and not as the agent of the defendant, the defendant could not be held liable; but, on the evidence in this case, it was certainly a question for the jury to say in what capacity he acted in instituting the prosecution against the plaintiff.

We are not prepared to say that the trial court erred in declining to grant the defendant's motion for a new trial. While the verdict and judgment are larger than usual in such cases, we cannot say that the award was the result of the bias, prejudice, or other improper motive or influence, on the part of the jury. There was evidence sufficient to warrant punitive damages. Each count declared upon a separate prosecution, which was alleged to be malicious; and this we have held to be also a question for the jury. If they believed from the evi-

[Abingdon Mills v. Grogan.]

dence that the plaintiff had made out his case and was entitled to recover, and that the prosecution was malicious, wanton, and without probable cause, they were justified in awarding punitive damages. The amount of damages, in such cases, is a question for the jury, under proper instructions by the court.

While there may be instances in which the trial court or an appellate court could set aside a verdict because so excessive as to show that the jury were influenced by improper motives or agencies, rather than by the evidence, in fixing the amount, we think that this is not such a case. The verdict as originally rendered was for $6,000; and, upon the motion for a new trial on the ground that the verdict was excessive, the trial court, which had heard all the evidence and had every opportunity to observe the witnesses, announced that a new trial would be granted, for this reason, unless the plaintiff remitted $2,000 of such verdict; whereupon the plaintiff in open court remitted $2,000 of the verdict, and the court then overruled the motion for a new trial and rendered a verdict for $4,000.

After a careful examination of all the evidence in this case, and due consideration of the fact that the suit was for two malicious prosecutions, we are not willing to put the trial court in error for declining to award a new trial, after the plaintiff had remitted $2,000 of the damages as fixed by the verdict of the jury.

Finding no error, the judgment of the trial court must be affirmed.

Affirmed.

SIMPSON, ANDERSON, and MCCLELLAN, JJ., concur.

[Abingdon Mills v. Grogan.]

ON APPLICATION FOR REHEARING.

MAYFIELD, J.—It is most earnestly insisted by counsel for appellant that a rehearing should be granted in this case; that there is manifest error in this record, in that the trial court should have given the affirmative charge, as requested, to find a verdict for defendant.

After several careful examinations of this record, we are not able to agree with the contention of counsel for appellant, for the following reason, which we will again epitomize, on account of the repeated and earnest insistences of counsel for apellant.

The action is for malicious prosecution, claiming damages as for two malicious prosecutions of plaintiff by the defendant, on the charges of "enticing away laborers" of the defendant. The undisputed evidence shows that these two prosecutions, as alleged, were instituted and prosecuted by the agents of the defendant, and that the grand jury failed to indict in both cases, and that the prosecutions were ended in favor, and by the discharge, of plaintiff before this action for malicious prosecution was begun; that the plaintiff was arrested, detained, and imprisoned in jail, in consequence of the prosecution, and as the result of the acts, agency, and advice, of the defendant or of its attorney.

These facts being undisputed, they were certainly sufficient to carry the case to the jury upon the general issue.

The defendant undertook to rebut plaintiff's case, and to show that there was probable cause for the institution of the prosecutions, and that there was no malice, which, if conclusively done, would have entitled it to the affirmative charge.

But was the evidence conclusice as to this? We think not.

[Abingdon Mills v. Grogan.]

It is most earnestly insisted by counsel for appellant, on this rehearing, that plaintiff was actually guilty of the charges preferred by the defendant, and for which he was prosecuted, notwithstanding the grand jury had twice refused to indict him on an ex parte hearing. Our answer to this is that, if that is true, the record before us does not so show it; and of course we are bound by the record. We do not so find that all evidence in this record shows that plaintiff was guilty as charged, or that there was probable cause for defendant's agent's believing him to be so guilty.

The mere fact that plaintiff was in Huntsville on the occasion when arrested, for the purpose of accompanying certain persons from Huntsville to Atlanta, and to pay their transportation and expenses, and that those persons were employees of defendant, does not conclusively show that plaintiff had enticed such employees away from defendant, within the meaning of the Criminal Code. Certainly plaintiff's evidence did not show conclusively, nor admit, that he was guilty of the criminal offense charged. A part of his evidence is as follows. "The charge on which I was arrested from Vaught's court was 'enticing laborers from the Abingdon Mills.' I did not solicit anybody, and did not offer anybody any sum of money or higher wages at all. I came here with the money for the purpose of paying transportation of certain hands who had already been hired to go to Atlanta. I did not employ or offer to employ any one, and did not have any authority from the Fulton Bag & Cotton Company to employ anybody, or offer any hands employment. After my arrest, and after I made bond, I went back to Atlanta that afternoon. I did not return to Huntsville until the following January, when I came back for trial. I was tried for carrying on the business of an emigrant agent, with-

out license, and was tried in this courthouse. Mr. Pride and Capt. Humes were the attorneys for the prosecution on my trial for carrying on the business of an emigrant agent. Mr. Sanders and Mr. Herring and Mr. Brown were all present at the trial, and I think they were all witnesses against me, and they were assisting the attorneys. Immediately after that trial I was re-arrested in the courthouse before I had gotten out of the courthouse, on a charge of enticing away laborers from the Abingdon Mills. * * * When I was carried up to Mr. Vaught's office that night in August, Mr. Herring said to me, 'I am glad we got you, old fellow, not on your account, but on account of the Fulton Bag & Cotton Mills.' Mr. Herring was assistant superintendent of the Abingdon Mills."

There is abundant evidence in this record tending to show that the arrangement for the hands to go from the Huntsville Mill to the Atlanta Mill were made by correspondence between the Huntsville employees and the Atlanta employers, and without any criminal participation therein on the part of this plaintiff or of any other person. We do not understand that this statute absolutely prohibits employees of one cotton mill from ever seeking or obtaining employment elsewhere, and that, if they ever do thereafter obtain employment in another mill, all other persons who aid them in going to such new employer or cotton mill are guilty of violating this statute.

The plaintiff further testified: "The only parties whose expenses or debts I had authority to pay were shown by some letters I had, which were written to Mr. S. F. Brown. The hands I now remember were Maggie Couch, and Bessie Merritt. That money was simply an advance on the part of the mill to these people. When I was in Huntsville before, in 1906, I was here as a

drummer, and did not know anything about the Abingdon Mills. I did not make any contract with Maggie Couch and the parties who came to see me at the hotel. I notified them that I was here for the Fulton Bag & Cotton Mills, to carry them back to Atlanta, and that I would buy the tickets, pay freight on household goods, etc. I did not offer any money to any others."

The defendant also insists that it was entitled to the affirmative charge, for the reason that the prosecutions were instituted and prosecuted under the advice of counsel, and were therefore with probable cause and without malice.

We do not think the evidence in this case was so conclusive as to take the questions from the jury. It is true that the evidence does show that two attorneys were consulted and advised with, about the prosecutions; but it also shows that one of these attorneys was a stockholder, an officer, and a director, of the defendant corporation, and that he was employed by it to prosecute the plaintiff, in addition to the prosecuting attorney for the state. The other attorney consulted was the county solicitor. He was twice examined as a witness, and testified, in part, as follows: "Capt. Humes assisted me in the trial of the case against Grogan, in the law and equity court, and suggested the writing of this affidavit. He assisted me in prosecuting Mr. Grogan, and it was at his suggestion and dictation that I made out this affidavit. That affidavit and warrant were written in the courtroom immediately after the trial of Grogan on the charge of carrying on the business of an emigrant agent without license. The matter was discussed with Mr. Brown, Mr. Herring, and Mr. Sanders, my recollection is, in the courtroom. We discussed the verdict in the other case, and then it was that this complaint was prepared, and the warrant issued. Brown and Herring

and Sanders did all the talking to me all the time. I did not request Capt. Humes to assist in the prosecution of that case. Mr. Brown told me that they were going to have Capt. Humes assist. I told Mr. Sanders and Mr. Herring and Mr. Brown, when they came to consult me about having Grogan arrested, that I thought it would be best to wait until we could find out that some of the employees had signed up, or gone to the depot, to be there and see that they started to move to the depot. I wanted them to be sure and know that he was here for that purpose before they made any arrest. I advised them all the time not to make arrest until they were certain that he had committed some overt act before he was arrested, and I felt that we would be pretty certain of his guilt if he had done these things that I have related. When the affidavit was sworn out in the courtroom after the first trial, Capt. Humes and I and Mr. Sanders were present, and I think Mr. Brown, Capt. Humes, and I heard all the evidence on the trial of Grogan for carrying on the business of an emigrant agent. Capt. Humes was a reputable practicing attorney and dictated the affidavit to me, after we had heard all the evidence. I concurred with Capt. Humes, in thinking that, under the evidence in that case, Grogan was guilty of enticing away laborers; but I thought at the time, and so told Capt. Humes that I thought, it would be dangerous for the company to swear out the second affidavit. I did not think it good policy to swear out the second affidavit."

It has been repeatedly held that the question as to the bona fides of obtaining the advice of counsel, and whether a full and fair statement of the facts was made to counsel, is usually one for the jury.—2 Greenf. Ev. 459; *McLeod v. McLeod,* 73 Ala. 42. See former report of this case, 167 Ala. 146, 52 South. 596-599. So these were all clearly questions for the jury.

[Abingdon Mills v. Grogan.]

We do not mean to say that there was no evidence in conflict with that quoted above; but the testimony quoted was in evidence, besides the undisputed facts which we have before stated. This, under all the authorities, was sufficient to carry the questions to the jury. For the trial court to have taken all these questions, and instructed a verdict for the defendant, would clearly have been a usurpation by the court of the functions of the jury. This case has already been tried twice, each time by a different jury, and each jury has found for the plaintiff and for substantial damages. There is nothing to show bias or prejudice against this defendant or in favor of the plaintiff. The plaintiff, who was prosecuted, was a non-resident of the state at the time of his arrest and at the time of his trial, while those who procured and instituted the prosecutions were resident citizens of the state and the county. A trial court has twice heard all the evidence, seen the witnesses, and observed their manner and demeanor; and in each instance it refused the defendant's motion to set aside the judgment. Two grand juries of Madison county have refused to indict the defendant on ex parte hearings of the prosecutors, and a petit jury has refused to convict him of a kindred offense of being or acting as an emigrant agent without a license. This court, on a former appeal, when the evidence was practically the same as it is now, held that the right of the plaintiff to recover was a question of fact for the jury, and reversed the case for another trial; and it would have been unusual for the trial court, on a second trial, with the evidence practically what it was before, to instruct the jury to find for the defendant, when this court had held that it should not so instruct the jury.

So the application for a rehearing on this appeal is, for all practical purposes, the second application as to

the question of the general affirmative charge. We are therefore somewhat surprised that counsel for appellant should have been so severely shocked at the court's action, on this second appeal, in saying exactly what it had said on the former appeal. It is no doubt often hard for counsel to see the correctness of verdicts and judgments against their clients. It is likewise a natural and meritorious trait of character that counsel should feel a deep interest in the result of the suits of their clients; but it does seem that in this case, after so many trials with the same result, and after consideration of all the undisputed facts, counsel should become reconciled to its loss, without thinking that the court has failed to give it the proper attention.