428 So.2d 1 (1982)
Bonnie RITCH
v.
Grover WALDROP, individually & d/b/a Western Auto Associate Store of Killen, Alabama, Western Auto Supply Co., a Corporation.
80-857.
Supreme Court of Alabama.
September 17, 1982.
Rehearing Denied March 11, 1983.
Michael Gillion of Brown, Hudgens, Richardson, Whitfield & Gillion, Mobile, for appellant.
Fred W. Killion, Jr. and Patricia K. Olney of Reams, Wood, Vollmer, Philips, Killion & Brooks, Mobile, for appellees.
ADAMS, Justice.
This appeal involves an action for malicious prosecution. Bonnie Ritch (plaintiff) brought action against Grover Waldrop (defendant) individually, and as operator of the Western Auto Associate Store of Killen, Alabama. The case was tried before a jury in the Circuit Court for Mobile County. A plaintiff's verdict in the amount of $30,000.00 was returned. The verdict and judgment later were set aside when the trial court granted defendant's motion for judgment notwithstanding the verdict. Plaintiff appealed.
The dispositive issue on this appeal is whether plaintiff rebutted the presumption of probable cause created by the grand jury's indictment of her on the criminal charge instigated by defendant. Our review of the evidence, and application of Johnson v. Haynie, 414 So.2d 946 (Ala.1982), *2 recently decided by this court, leads us to conclude that she did. Therefore, we find the trial court's action granting defendant's motion for JNOV to be in error, and we reverse for reinstatement of the judgment entered originally for plaintiff.
Before reciting the pertinent facts, we first note the proper standard of review:
A motion for judgment notwithstanding the verdict tests the sufficiency of the evidence in the same way as does the motion for directed verdict at the close of all the evidence. Ala.R.Civ.P. 50, Committee Comments. Granting the motion for judgment notwithstanding the verdict says, without weighing the credibility of the evidence, there can be but one reasonable conclusion from the evidence as to the proper judgment. 5A Moore's Federal Practice ¶ 50.07[2], at p. 50-76.
Hanson v. Couch, 360 So.2d 942 at 944 (Ala. 1978); quoted with approval in Casey v. Jones, 410 So.2d 5 (Ala.1981).
The standard of review for a directed verdict is well established:
A directed verdict is proper only where there is a complete absence of proof on an issue material to the claim or where there are no disputed questions of fact on which reasonable people could differ. Deal v. Johnson, 362 So.2d 214 (Ala.1978). In considering a motion for directed verdict, the court must apply Rule 50(e), ARCP, under which "a question must go to the jury, if the evidence, or any reasonable inference arising therefrom, furnishes a mere gleam, glimmer, spark ... or a scintilla in support of the theory of the complaint ...." Dixie Electric Company v. Maggio, 294 Ala. 411, 318 So.2d 274 (Ala.1975).
In addition, the trial court must view the entire evidence, and all reasonable inferences which a jury might have drawn therefrom, in the light most favorable to the non-moving party. Alabama Power Company v. Taylor, 293 Ala. 484, 306 So.2d 236 (1975); Vintage Enterprises, Inc. v. Cash, 348 So.2d 476 (Ala.1977). Also, this Court's function in reviewing a motion for a directed verdict is to review the tendencies of the evidence most favorably to the non-movant, regardless of a view we may have as to the weight of the evidence, and we must allow such reasonable inferences as the jury were free to draw, not inferences which we may think the more probable. Beloit Corp. v. Harrell, 339 So.2d 992 (Ala.1976).
Caterpillar Tractor Company v. Ford, 406 So.2d 854 at 856 (Ala.1981).
Guided by the above principles, we next review the facts pertinent to the issue presented by this appeal. Viewed in a light most favorable to plaintiff, the evidence showed the following. In 1976, plaintiff and her husband lived in Florence, Alabama. They had purchased various household items on credit from defendant's store.[1] Mr. Ritch suffered from a respiratory problem. His physician ordered him to move to a sea level altitude for his health. In September 1976, plaintiff and her husband did so. With them, they took approximately $700.00$800.00 of merchandise bought at defendant's store and subject to a security interest and installment sales agreement. The agreement required monthly payments.
Before moving, plaintiff and her daughter went to see defendant. Plaintiff informed defendant that she and her husband would be moving to Mobile, Alabama, but that they would keep sending payments. Plaintiff stated that she did not have a new address. Defendant, allegedly, acquiesed. No further payments were made.
The next day plaintiff and her husband moved to Dauphin Island, which is located *3 in the Mobile area. The parties exchanged correspondence. Plaintiff offered to make a double payment on the account in October, because she had missed the September payment. Defendant refused to accept such a payment. Defendant informed plaintiff that he wanted payment in full. The parties were unable to reach a compromise on this matter.
In June, 1977, plaintiff was taken into custody by the Mobile County Sheriff's Department and transported to the county jail. She was detained for only fifteen minutes and then released without being booked or fingerprinted. Approximately one month later, defendant called plaintiff at her home, inquiring why she was not in jail. According to plaintiff, defendant stated that "he would go to the ends of hell to get his money out of [her]," that he would get his money "one way or another," and that he would put her in jail. In fact, defendant had been to see the district attorney in Lauderdale County concerning plaintiff. The matter was presented to the grand jury, before which defendant testified, and an indictment was returned in May 1977. Plaintiff was indicted for intending to hinder, delay, or defraud defendant's lien in the subject goods by selling or removing them in violation of Code 1975, § 13-4-2. Defendant testified that some time between April 1977 and March 1978, he offered to attempt to have the charge dropped if she would pay half of the balance due on the account.
In September 1977, defendant wrote to Mr. Ritch asking him to fill out a form for the purpose of collecting disability insurance to pay the account. The insurance was provided under the installment sales agreement. The form was not returned. Plaintiff testified that she did not believe her husband had insurance because his illness pre-dated the debt.
In February 1978, plaintiff was arrested again. This time she was transported to Lauderdale County where she was arraigned, pled not guilty, and was released on her own recognizance. Plaintiff and defendant were the only witnesses at her trial, which was tried before the court without a jury. She was found not guilty.
Defendant cites Alabama Power Company v. Neighbors, 402 So.2d 958 (Ala.1981) (Neighbors), contending that it disposes of this case in his favor. In Neighbors, this court noted many well established principles applicable to the law of malicious prosecution. The elements of the tort were stated as follows:
To successfully maintain an action for malicious prosecution in Alabama, the plaintiff has the burden of proving that a prior judicial proceeding was instigated by the defendant without probable cause and with malice, such proceeding ending in favor of the plaintiff, but nevertheless causing the plaintiff damages. [Citations omitted.]
Neighbors, at 962.
Defendant correctly calls to our attention the rule that where
a defendant merely gives the district attorney's office information regarding an alleged crime, leaving the decision to prosecute entirely to the uncontrolled discretion of the district attorney, who thereafter makes his own independent investigation and thereupon takes the information before the grand jury which returns indictments against the suspects, the defendant, in a malicious prosecution action, is not regarded as having instigated the criminal proceeding.
Neighbors, at 962. That rule presupposes that defendant has stated all the material facts within his knowledge regarding the alleged crime (or otherwise disclaims personal knowledge of the facts) and has not brought about the indictment by "fraud, subornation of witnesses, suppression of testimony, or other like misconduct...." Neighbors, at 962-3, quoting American Surety Co. v. Pryor, 217 Ala. 244, 115 So. 176 (1927).
Neighbors observed the effect of an indictment followed by an acquittal of the defendant:
In malicious prosecution the general rule is that the finding of an indictment by a grand jury against one charged with *4 crime is prima facie evidence of the existence of probable cause, and that the acquittal of a defendant upon the trial does not tend to show a want of probable cause for believing him guilty of the offense charged when the arrest is made or prosecution initiated....
Neighbors at 967, quoting Union Indemnity Co. v. Webster, 218 Ala. 468, 118 So. 794 (1928).
At trial, defendant's version of the facts disputed most of that which we have recounted above. In essence, defendant testified that the Ritches left town without advising him of where they were going. He stated that he went through extensive efforts to locate them, and in so doing, learned that the Ritches allegedly had bad credit and that they had left town owing rent. On direct examination, defendant explained his reason for going to the district attorney:
Q. Next, [you] talked to the district attorney about [the] account. He said he wasn't a collection agency, but let him look into the matter. [Plaintiff was] bound over to grand jury and indicted [by] the grand jury.
A. That's right. I believe it was CIT.
Q. As far as the district attorneywhat did you tell him?
A. The same thing I am telling you today that about the landlady and she left and couldn't find her and couldn't get a good address.
He said he wasn't a collection agency, but he would look into the matter.
....
Q. When you talked to the DA, did you say I want to go before the grand jury or anything like that?
A. I just asked him if he could help me. I didn't believe people ought to leave owing money.
Defendant theorizes that, under Neighbors, for plaintiff to prevail she had to adduce evidence establishing that defendant did not make a full and fair disclosure to the district attorney, or that he obtained the indictment through misconduct. He contends, therefore, that the trial court properly granted his motion for JNOV. We disagree with defendant's analysis of the law as applied to the facts in this case.
Johnson v. Haynie, supra, was decided subsequent to trial and the granting of the motion for JNOV in the case now under consideration. In Johnson v. Haynie, we distinguished two fact situations in cases of malicious prosecution. The first was a situation where a conviction is later vacated, or reversed, on appeal. Here, the presumption of probable cause "must be rebutted by evidence which clearly overcomes it." Johnson v. Haynie, citing Brown v. Parnell, 386 So.2d 1137 (Ala.1980). The second situation considered in Johnson v. Haynie dealt with the burden of proof in rebutting the presumption of probable cause where an indictment is followed by an acquittal. There, a lesser burden of proof applies. "A plaintiff need only rebut such a presumption to the reasonable satisfaction of the jury." Johnson v. Haynie. The instant case comes within this second situation which requires a lower burden of proof.
Defendant's argument advances what is actually a defense to plaintiff's action. Judge Wright, speaking for the Court of Civil Appeals, explained how the defense of advice of counsel is properly employed.
However, to prevail on that defense, it must be shown factually that the attorney's advice was given after a full and fair statement of all the facts and circumstances known to the prosecutor. Broussard v. Brown [353 So.2d 804 (Ala. Civ.App.1978)], supra; Birwood Paper Co. [v. Damsky, 285 Ala. 127, 229 So.2d 514 (1969)], supra. It is undisputed that defendant consulted with a district attorney and with a municipal judge, among others, before securing the warrant. However, the testimony of defendant as to the information he gave counsel is very limited and, in part, is in conflict with the testimony of plaintiff. The evidence does not conclusively show that defendant gave a full and fair statement of all the facts and circumstances known to him. If the material facts are in dispute and defendant's testimony is that he related *5 only his version of the facts to counsel, it must be a jury question as to whether advice of counsel came after a full and fair disclosure of facts known to him. The issue of a "full and fair statement" to counsel is usually one for the jury. Hanson v. Couch, supra; Abingdon Mills v. Grogan, 175 Ala. 247, 57 So. 42 (1911).
Partridge v. Sawyer, 383 So.2d 184 at 186 (Ala.Civ.App.1980).
In both Partridge v. Sawyer and the instant case, defendants consulted with a district attorney. In both, there was scant testimony as to the information defendants provided the district attorney. Neither showed conclusive evidence that defendants made a full and fair disclosure of the facts and circumstances known to them regarding the alleged criminal actions of which they complained. Accordingly, we agree with Judge Wright's statement in Partridge v. Sawyer, that where the material facts are in dispute and defendant testifies that he related only his version of the facts to the district attorney, a jury question is created as to whether a full and fair disclosure was made.
Under our decision in Johnson v. Haynie, the jury had sufficient facts, as we have recounted above, from which they reasonably could conclude that defendant instigated plaintiff's indictment without probable cause, and with malice. Under Partridge v. Sawyer, the jury also could reasonably conclude, in conjunction with finding lack of probable cause and malice, that defendant failed to establish his defense of having made a full and fair disclosure to the district attorney. Therefore, the trial court erred in granting defendant's motion for JNOV. Accordingly, we reverse and remand the judgment of the trial court, directing that it reinstate the jury verdict and award entered originally for plaintiff.
REVERSED AND REMANDED WITH DIRECTIONS.
TORBERT, C.J., and FAULKNER, JONES, ALMON, SHORES and BEATTY, JJ., concur.
EMBRY, J., concurs specially.
EMBRY, Justice (concurring specially):
I agree with the majority that "[t]he dispositive issue on this appeal is whether plaintiff rebutted the presumption of probable cause created by the grand jury's indictment of her on the criminal charge instigated by defendant."
However, I would extend my views expressed in my dissent in Hanson v. Couch. In that case I was addressing the particular facts of the situation presented in it.
It is my view that once a prosecution has been terminated favorably to one charged with a crime, whether it be by dismissal of the charge or indictment, or acquittal by a judge or jury, then there should be no presumption of probable cause created by the charge made either by a warrant, information, or indictment. Upon disposition favorable to the defendant, a new ball game begins and the fact issue of probable cause would be litigated before the trier of fact in the action for damages for malicious prosecution.
NOTES
[1] The parties vigorously dispute the fact as to whether Mr. and Mrs. Ritch had a joint account or separate accounts. Plaintiff argues that they had separate accounts, that hers was paid off, and that she was wrongfully prosecuted for a debt of her husband's. Defendant argues that there was just one Ritch account and that plaintiff was properly prosecuted for removing, selling, or buying property purchased under that account to which he had a claim. In light of our holding, this factual dispute is inconsequential; thus, we find it unnecessary to address it further.